IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTINE JACKSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 19-00629-KD-N |
| ) | |
| MARION MILITARY INSTITUTE ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Partial Motion to Dismiss (Doc. 8) filed by Defendant Marion Military Institute ("MMI"), to which the Plaintiff, Christine Jackson ("Jackson"), filed a response in opposition (Doc. 16) and MMI filed a reply (Doc. 17). These motions have been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and S.D. Ala. GenLR 72(b). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that the MMI's Partial Motion to Dismiss (Doc. 8) is to be **DENIED, in part, and GRANTED, in part, as set out herein.**

I. **Factual Background**

On September 11, 2019, Plaintiff Christine Jackson ("Jackson"), an African American woman, brought the instant suit against Defendant Marion Military Institute ("MMI") alleging violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Fourteenth Amendment and claiming a

hostile work environment as a result of her employment and termination. (PageID. 1-21.)

Jackson was initially hired by MMI in 2002 as a female TAC Officer. In 2012, she was moved from her TAC position and temporarily transferred to work in the Commandant's office doing clerical work, assisting students, and working as a library monitor for students on Academic probation. (PageID. 4.) Jackson's title was eventually changed to "Evening Barracks Supervisor" but she was not acting in that capacity during this interim period. (Id.) On June 22, 2018, Jackson was given a written notice of intent to eliminate her current position as Evening Barracks Supervisor and was advised that this would result in her termination. (PageID.5, ¶¶ 19-20, 26-28.) In response, Jackson made a written request to retain her employment and challenged the action pursuant to the "Student's First Act". (PageID. 46-48.) A hearing and appeals process followed, and the termination decision was upheld. (PageID.26-28, 32-36, 46-48.)

On December 19, 2018, Jackson filed an EEOC charge against MMI alleging discrimination based on race, color, sex, national origin, retaliation and age. (Page ID.23.) Jackson stated that the discrimination was "continuing," and had started in 2010. (Id.) She included the following narrative in her charge:

> I was hired in 2002 as a female "TAC". Without prior notice or explanation all black female TAC's positions were eliminated and only white or male TAC's were retained by "MMI". In the [sic] positions they continued their employment in the now co-ed dormitories where I was formerly employed. In addition, since my termination more male TAC's were hired and placed in the position I formerly held. I was temporarily transferred to work in the Commandant's office doing clerical work and assisting students and as a Library monitor for students on Academic

2

probation. My title was changed to "Evening Barracks Supervisor" but I was not acting in that capacity during this interim period. This position was eliminated on June 22, 2018 based on what I believe was race, sex, age, national origin, and color discrimination, as well as retaliation for past protected activity including but not limited to opposing discriminatory activity by MMI against myself and others (See Exhibit A attached). I was told my job duties were the same as white male "OC" Dudley Barton making it redundant so there was no longer any reason to pay me as well. Concurrent with my termination other individuals outside my protected class or characteristics were continuing to be hired by MMI.

I made a written request to the President Mollahan to retain my employment with justification as I was advised (See Exhibit B attached). Prior to the change in my duties and the termination of my employment I maintained a record of high performance and reliability in accomplishing my assigned duties at MMI. Although I was performing the same duties as a TAC officer or "OIC" my job description nor compensation met the standards for the position as it should have like that of individuals outside my protected class. President Mollihan recused himself from making the decision regarding termination of my employment with MMI Keith Brown President of Jefferson State Community College was appointed acting President of MMI to make the decision regarding my termination (See Exhibit C attached). The basis for my termination was alleged decreased educational resources but the OIC's retained performing allegedly the same duties as mine were paid significantly higher salaries and some had far less tenure at MMI than me highlighting the ongoing discrimination against me because of my protected class as it relates to salary and benefits. Keith Brown based his decision to allow my termination on false and pretextual information to cover up the discriminatory motivations which were race, sex, color, national origin, age and retaliation.

Jackson attached her notice of termination letter, her letter to Colonel Mollahan in response to the termination notice, and the letter recusing Col. Mollahan from the termination hearing to her EEOC charge. (PageID.25-38.) The EEOC issued a Dismissal and Notice of Rights dated June 11, 2019. (PageID.41-42.) Jackson filed the instant suit on September 11, 2019.

## II. Applicable Legal Standards

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). " 'To survive . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but [rather] asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendants liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, quoting in part FED. R. CIV. P. 8(a)(2).

FED. R. CIV. P. 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft*

*v. Iqbal*, 556 U.S. 662, 677-78 (2009) ("Under [Rule] 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.").

Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *compare Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite statutory elements in conclusory fashion. Rather, his allegations must proffer ***enough factual content*** to 'raise a right to relief above the speculative level.'" (emphasis added)), *with Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("Factual allegations in a complaint ***need not be detailed but*** 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted and added))).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks

5

for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678-79 (internal citations and quotation marks omitted); *compare id.* at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."), *with Patel v. Georgia Dep't BHDD*, 485 Fed. App'x 982, 983 (11th Cir. Aug. 8, 2012) (per curiam) ("In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face,' rather than merely conceivable." (quoting *Twombly*, 550 U.S. at 570)). In addition to the pleading requirements of Rule 8, FED. R. CIV. P. 10(b) further requires that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count."

### III.  Analysis

#### A.  Eleventh Amendment Immunity

MMI first argues that it is an arm of the state of Alabama and is therefore immune from suit under the Eleventh Amendment to the U.S. Constitution as to Jackson's ADEA discrimination and retaliation claims in, respectively, Counts 3 and 4 of the complaint, and her Fourteenth Amendment equal protection claim in Count

6

6, which the undersigned construes as a claim brought under 42 U.S.C. § 1983 for a violation of said amendment.1

> Eleventh Amendment immunity bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the states' immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363–64, 121 S. Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Cross v. Ala. Dep't of Mental Health & Mental Retardation,* 49 F.3d 1490, 1502 (11th Cir. 1995). "This bar exists whether the relief sought is legal or equitable." *Papasan v. Allain,* 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L. Ed. 2d 209 (1986). The Eleventh Amendment applies when "the State or one of its agencies or departments is named as the defendant...." *Id.* (quotation marks omitted). That is, Eleventh Amendment immunity "is available 'only' to states and arms of the states." *Walker v. Jefferson Cty. Bd. of Educ.,* 771 F.3d 748, 751 (11th Cir. 2014).
>
> …
>
> Whether an entity is an "arm of the state" is determined by considering four factors: (1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. *Walker,* 771 F.3d at 751–53.[2]

---

1 The Eleventh Circuit has refused to imply a *Bivens*-style action for a direct violation of the Fourteenth, and Eighth, Amendments against state actors where § 1983 provided "an adequate substitute for direct action[,]" thus "preclud[ing] the implication of a direct constitutional action under the eighth and fourteenth amendments against state officials." *Williams v. Bennett,* 689 F.2d 1370, 1390 (11th Cir. 1982). *See also Tani v. Walter Energy, Inc.*, No. 2:14-CV-00890-WMA, 2014 WL 6473441, at *3 (N.D. Ala. Nov. 18, 2014) ("The amendments to the U.S. Constitution do not allow freestanding claims pursuant to the amendments. Instead, any cause of action [against a state entity] for violation of the amendments must be brought through 42 U.S.C. § 1983.").

2    In *Walker*, the Eleventh Circuit made clear that this multifactor test for Eleventh Amendment immunity, which was first articulated as a three-factor test in the panel decision *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1511 (11th Cir. 1990), and later refined into a four-factor test in the *en banc* decision *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc), "remains the law of the circuit." 771 F.3d at 752 – 53.

*Nichols v. Ala. State Bar*, 815 F.3d 726, 731-32 (11th Cir. 2016) (per curiam) (footnote omitted).

"Congress has not abrogated Eleventh Amendment immunity in [42 U.S.C.] § 1983 cases[,]" *id.* at 731, and the Supreme Court has held that, "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals" such as Jacksonl. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). "Furthermore, the State of Alabama has not agreed to be sued for violations of an

As noted by the *Walker* court, in *Versiglio v. Board of Dental Examiners of Alabama*, 686 F.3d 1290 (11th Cir. 2012), a panel of the Eleventh Circuit Court of Appeals held: "Whether an agency qualifies as an arm of the state is a federal question with a federal standard, but whether that standard is met will be determined by carefully reviewing how the agency is defined by state law... In conducting our analysis, this court 'has stated the most important factor is how the entity has been treated by the state courts.' " 686 F.3d at 1291-92 (quoting *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984) (citing *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980) (stating that whether an entity is a " 'second self' of the state or a 'separate and distinct' entity subject to suit 'must be determined by the law of the state' " (citation omitted)))). *Accord Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (per curiam) (same, quoting *Versiglio*).

*Walker* rejected arguments that the *Versiglio* decision "can be read as collapsing the entire Eleventh Amendment multi-factor test into a single dispositive inquiry—whether the state courts grant state law immunity to the entity for suits based on state law—" finding that such a reading "conflicts not only with our 1990 decision *Stewart*, but also with our 2003 en banc decision in *Manders*." 771 F.3d at 754 (declining to read *Versiglio* "in a way which violates our prior panel precedent rule and creates interpretive problems for panels in the future"). *Walker* reaffirmed that "how the state courts treat an entity is only one part of the first factor of the *Stewart* and *Manders* analysis. Within the first factor the court also weighs how state statutes treat the particular entity." *Id.* (quotation omitted). *Walker* also noted that, "[t]o the extent that *Huber* held that Eleventh Amendment immunity is governed solely by how state law characterizes an entity, it has been superseded by the later en banc decision in *Manders*, 338 F.3d at 1309 (setting out four-part Eleventh Amendment immunity test)." *Id.* n.4.

individual's civil rights." *Nichols*, 815 F.3d at 731 (citing Ala. Const. art. I, § 15 ("[T]he State of Alabama shall never be made defendant in any court of law or equity.")). Thus, MMI is immune from Jackson's ADEA and Fourteenth Amendment claims if it is an "arm of the state." Applying the four-factor test set forth above, the undersigned finds that it clearly is.

As to how state law defines the entity, Alabama statute expressly confirms that MMI is "a state college." Ala. Code § 16-60-332(a)(1). As to degree of state control over the entity, Alabama statute expressly provides that MMI's "lands, facilities, assets, and proceeds from these lands, facilities, and assets, … are property of the state[,]" *id.*, and that MMI is operated "under the control, management, and direction of the Alabama State Board of Education and the Chancellor [of the Department of Postsecondary Education]." *Id.* § 16-60-332(b). As to where the entity derives its funds, Alabama statute expressly provides that MMI is "funded by legislative appropriation to the Alabama State Board of Education -- Two Year College System." Ala. Code § 16-60-338. Finally, as to who is responsible for judgments against the entity, Alabama statute expressly provides that "liabilities, obligations, and responsibilities … become those of the Alabama State Board of Education." Ala. Code § 16-60-332(a)(1). Accordingly, MMI shares in Alabama's Eleventh Amendment immunity, and Jackson's ADEA and Fourteenth Amendment claims are therefore

9

due to be **DISMISSED without prejudice** under Rule 12(b)(1) for lack of subject matter jurisdiction.[3]

### B.    EEOC Charge

> Prior to filing a Title VII action … a plaintiff first must file a charge of discrimination with the E[qual Employment Opportunity Commission]. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).
>
> The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983); *see also Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotation and citation omitted) … [J]udicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but … allegations of new acts of discrimination are inappropriate. *Wu*, 863 F.2d at 1547 (citation omitted).
>
> In light of the purpose of the EEOC exhaustion requirement, … a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000) (internal quotation and citation omitted); *Sanchez*, 431 F.2d at 466 (noting that the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge). Courts are nonetheless "extremely reluctant to allow procedural technicalities to

---

[3] Jackson purports to "voluntarily withdraw[]" her claim of retaliation under the Fourteenth Amendment. (See Doc. 16, PageID.105). While Federal Rule of Civil Procedure 41(a) allows a plaintiff to voluntarily dismiss her "action" under certain conditions, that rule's "text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004). Rather, a "plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)." *Id.* (quotation omitted). Here, Jackson has not moved to amend her complaint to drop her Fourteenth Amendment retaliation claim. Regardless, a dismissal of that claim without prejudice is functionally equivalent to dropping that claim by amendment, in that it does not eliminate the claim on the merits.

10

> bar claims brought under [Title VII]." *Sanchez*, 431 F.2d at 460–61. As such, … " 'the scope of an EEOC complaint should not be strictly interpreted' " *Id.* at 465 (citation omitted).

*Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (per curiam). "In a non-deferral state, such as Alabama, a plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination. Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." *Jordan v. City of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008) (per curiam) (unpublished) (citations omitted).

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– … day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Jackson filed her EEOC charge relevant to this lawsuit on December 19, 2018 (*see* Doc. 1-1, PageID.23), exactly 180 days after receiving notice MMI's notice of intent to terminate her position. Thus, MMI argues, "the elimination of her position is the only adverse action that was timely presented to the EEOC." (Doc. 8, PageID.65). MMI further asserts that "Jackson's claims of adverse action in the form of 'excessive scrutiny, observation, [and] changing then elimination of job description,' denial of performance appraisals, as well as her descriptions of a 'hostile work

11

environment' (PageID.12-13, ¶¶ 48, 52, 54) cannot form the basis of a Title VII retaliation claim on their own because they are untimely and not within the scope of her EEOC charge." (Doc. 8, PageID.65).4 MMI similarly argues that "Jackson's EEOC charge makes no reference to increased scrutiny and observation, or other allegations of a hostile work environment" (*id.*, PageID.68), and has thus also failed to administratively exhaust her hostile work environment claims in Count 5.

Given the timing of her charge's filing, the undersigned agrees that Jackson's termination is the only discrete act timely submitted to the EEOC. Therefore, any of Jackson's claims of Title VII retaliation based on prior discrete acts are untimely. However, the Supreme Court has held that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). "It does not matter, for purposes of the [timely filing requirement], that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* "In making this ruling, the Court essentially rejected the 'continuing violation doctrine' and simplified the law by allowing courts to view allegations of hostile work environment as 'a single unlawful employment practice.'" *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282

---

4 The Eleventh Circuit "recognizes a cause of action for retaliatory hostile work environment." *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam).

(11th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117). "Put simply, if the smallest portion of that 'practice' occurred within the limitations time period, then the court should consider it as a whole." *Id.*

Nevertheless, "[a]s opposed to discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire, a hostile work environment claim addresses acts different in kind whose very nature involves repeated conduct, such as discriminatory intimidation, ridicule, and insult." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (quotations omitted). "Thus, these 'claims are based on the cumulative effect of individual acts.'" *Id.* (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115). "Discrete acts cannot alone form the *basis* of a hostile work environment claim. But the [trier of fact can] *consider* discrete acts as part of a hostile work environment claim." *Gowski v. Peake*, 682 F.3d 1299, 1312-13 (11th Cir. 2012) (per curiam) (citations omitted). "Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim. The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).[5] "The Supreme Court has indicated that acts

---

[5] In both its motion and reply brief, MMI cites *Thompkins v. U.S. Xpress Inc.*, No. 1:13-cv-02674-AT-RGV, 2014 WL 11460488 (N.D. Ga. Nov. 26, 2014), for the proposition that "an untimely hostile work environment claim cannot be saved by trying to connect it to a discrete act that happened to be within the 180 days." 2014 WL 11460488, at *10 (quotation omitted). That statement, however, appears inconsistent with the holding in *Chambless* that sufficiently related discrete acts can be considered part of a hostile work environment claim.

13

may be part of the same unlawful employment practice if the 'pre- and post-limitations period incidents involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.' " *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 796 (11th Cir. 2020) (per curiam) (unpublished) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 120).

After a close review of Jackson's EEOC charge and attached exhibits (Doc. 1-1),[6] the undersigned agrees with MMI that a claim of a hostile work environment cannot reasonably be said to be within the scope of the charge. As noted above, a claim of hostile work environment cannot be based on discrete acts alone, and instead must involve acts of a repetitive nature such as discriminatory intimidation, ridicule, and insult. Moreover, "[t]o establish a hostile work environment claim under Title VII, the plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Gowski*, 682 F.3d at 1311 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Jackson's charge and attached exhibits never mention a "hostile work environment" or similar phrase. Moreover, the factual allegations in the charge are not suggestive of the kind of repetitive non-discrete acts to establish a hostile work environment, nor do they suggest the requisite level of severity or pervasiveness of such acts. Jackson's

---

[6] Jackson attached her EEOC charge and its supporting documents as Exhibit A to her complaint, and a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

allegations on the charge form itself (Doc. 1-1, PageID.23-24), and in the attached copy of the letter she sent to Colonel Mollahan challenging the proposed termination of her position (*id.*, PageID.30-31),7 focus exclusively on discrete acts: her termination, changes in her job title and work assignments, denials of annual performance evaluations, and denial of position placements.8 While Jackson did claim that she "was constantly asking the former Commandants when [her] job review was, but no one ever responded" (Doc. 1-1, PageID.31), to the extend those failures to respond can be considered non-discrete acts, they do not reasonably suggest a workplace "permeated with discriminatory intimidation, ridicule, and insult…" *Harris*, 510 U.S. at 21.

---

7 Jackson also attached to the charge copies of the June 22, 2018 notice of the proposal to terminate her position (Doc. 1-1, PageID.26-28), the June 25, 2018 letter appointing an Acting President to hear Jackson's termination proceeding (*id.*, PageID.38), and the decision to terminate her position (*id.*, PageID.32-36). However, none of these documents provide any additional factual information suggestive of a hostile work environment claim.

8 *See Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840–41 (11th Cir. 2005) (per curiam) (unpublished) (finding the plaintiff's EEOC charge did not reasonably encompass a hostile work environment claim because "all of the factual allegations … relate[d] to his termination and none relate[d] to a retaliation claim" – specifically, "[n]othing in [the] EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred[;]" rather, the plaintiff "noted the date of his termination as both the earliest and latest date of discriminatory conduct; explained that his termination ostensibly stemmed from attendance policy violations; and stated that white males with inferior attendance records were retained"); Ramon v. AT & T Broadband, 195 F. App'x 860, 866 (11th Cir. 2006) (per curiam) (unpublished) ("Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment.").

Accordingly, the undersigned finds that Jackson's Title VII hostile work environment claims in Counts 4 and 5, and any claim of Title VII retaliation based on discrete acts other than the termination of her position proposed June 22, 2018, are due to be **DISMISSED** under Rule 12(b)(6) for failure to exhaust those claims with the EEOC.

### C. Count 4

A plaintiff asserting a Title VII retaliation claim must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). MMI has also argued that Jackson's Title VII retaliation claims in Count 4 should be dismissed under Rule 12(b)(6) to the extent they may be premised on (1) allegations of activity that does not qualify as "protected" under Title VII,[9] (2) protected activity alleged to have occurred after her position was proposed for termination on June 22, 2018,[10] and (3) alleged adverse actions that were not "materially adverse."[11]

---

[9] "Title VII's anti-retaliation provision prohibits retaliation when an employee 'oppos[es] any practice made an unlawful employment practice by [Title VII]' or 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Howard*, 605 F.3d at 1244 (quoting 42 U.S.C. § 2000e–3(a)).

[10] "Employers need not suspend previously planned [adverse employment actions] upon discovering that [protected activity has occurred], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

[11] A "materially adverse" action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted).

Upon consideration, the undersigned finds that, to the extent these arguments are not rendered moot by the undersigned's finding above that Jackson's retaliation claims based on untimely-filed discrete acts and hostile work environment are due to be dismissed, they are more appropriately raised in a motion for summary judgment under Federal Rule of Civil Procedure 56. MMI does not argue that Jackson fails to allege <u>any</u> viable claim of Title VII retaliation, and even activity that might not by itself support a retaliation claim can still provide relevant background and context to activity that does.[12]  Reserving judgment on these issues until after discovery has occurred will put Jackson in a stronger position to more definitely articulate the theory or theories of her retaliation claims. Accordingly, MMI's motion is due to be **DENIED** as to these issues.

## IV.    Conclusion

In accordance with the foregoing analysis, it is **RECOMMENDED** that the MMI's Partial Motion to Dismiss (Doc. 2) be **GRANTED, in part,** and **DENIED, in part**, as follows:

1. that it be **GRANTED** as to **DISMISSAL without prejudice** under Rule 12(b)(1) on Jackson's ADEA claims in Counts 3 and 4 of the complaint, and her Fourteenth Amendment equal protection claim in Count 6;

2. that it be **GRANTED** as to **DISMISSAL with prejudice** under Rule 12(b)(6) on Jackson's Title VII hostile work environment claims in Counts 4 and 5, and

---

[12] MMI also has not moved in the alternative for a more definite statement of Jackson's retaliation claims under Federal Rule of Civil Procedure 12(e).

17

any claim of Title VII retaliation based on discrete acts other than the termination of her position proposed June 22, 2018; and

3. that it be otherwise **DENIED**.

**DONE** this 8th day of **September 2020**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.